**E-FILED**
Thursday, 25 August, 2016  12:55:44 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **KATHLEEN M. SRP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 15-cv-3006** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before this Court are cross motions for summary judgment (d/e 11, 14), the Report and Recommendation of United States Magistrate Judge Tom Schanzle-Haskins (d/e 16), and the Commissioner's Objection to the Report and Recommendation (d/e 48).

The Court ACCEPTS and ADOPTS the disposition recommended in the Magistrate Judge's Report and Recommendation (d/e 16).  Upon careful review of the record and the pleadings, the Court OVERRULES the Commissioner's

Objection because the ALJ's opinion does not comply with the recently published SSR 16-3p. Plaintiff's Motion for Summary Judgment (d/e 11) is GRANTED. The Commissioner's Motion for Summary Affirmance (d/e 14) is DENIED. This case is REVERSED and REMANDED for consideration in accordance with SSR 16-3p and this Opinion.

## I. BACKGROUND

On April 25, 2012, Plaintiff Kathleen M. Srp filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 30, 2005. Plaintiff later amended or clarified that her alleged onset date was August 15, 2011. Plaintiff's claim was denied initially (July 20, 2012) and upon reconsideration (December 5, 2012). Plaintiff then filed a written request for hearing, and a video hearing was held on August 1, 2013. ALJ Diane Flebbe presided over the hearing. Plaintiff appeared in Springfield, Illinois and was represented by attorney Donald Hanrahan. Bob Hammond, an impartial vocational expert also appeared at the hearing. The ALJ found that Plaintiff was not under a disability. R. 23. Plaintiff appealed the ALJ's decision to the Appeals Council, but the Council declined to review the

decision.  R. 1.  Therefore, the decision of the ALJ is the final decision of the Commissioner.

Plaintiff claims that she is disabled because of sleep disorders, hypersomnia/narcolepsy, sleep apnea, hypertension, restless leg syndrome, low back and sacrum pain with muscle spasms, upper body pain, bulging and degenerative discs, and headaches/migraines.  R. 298.

The ALJ found that Plaintiff met the insured status requirement of the Social Security Act and that Plaintiff had not engaged in substantial gainful activity since the onset date.  R. 15.  The ALJ then found that Plaintiff has the following severe impairments: "excessive daytime sleepiness, obstructive sleep apnea, restless leg syndrome, mild degenerative changes in the lumbar spine and hips, degenerative changes of the sacrum, headaches, fibromyalgia, bilateral carpal tunnel syndrome, left epicondylitis, obesity, and a major depressive disorder."  R. 15.  The ALJ further found that these impairments cause "more than a minimal limitation" on Plaintiff's ability to obtain employment.  R. 15.

The ALJ then found, however, that the severity of Plaintiff's impairments does not meet one of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1 for the following reason: (1) evidence of Plaintiff's sleep apnea did not establish "cor pulmonale with mean pulmonary pressure greater than 40 mm Hg, requisite hypoxemia, or a qualifying organic mental disorder"; (2) Plaintiff's "musculoskeletal condition" did not prohibit her from ambulating or performing fine and gross movements; (3) evidence of Plaintiff's back condition does not establish the required "nerve root compression, spinal arachnoiditis, or spinal stenosis"; (4) Plaintiff's carpal tunnel syndrome does not cause "sustained disturbance of gross and dexterous movements"; (5) none of Plaintiff's restless leg syndrome, excessive daytime sleepiness, or headaches met any listing; (6) the intensity, persistence, and functionally limiting effects of Plaintiff's fibromyalgia did not prevent Plaintiff from performing sedentary and light work; and (7) Plaintiff's mental impairment did not satisfy two of the paragraph B criteria in listing 12.04.  R. 15-16.  The ALJ then went on to explain her reasoning for the latter finding regarding Plaintiff's symptoms.

The ALJ evaluated each of the paragraph B factors: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. R. 16. The ALJ noted that Plaintiff is able to execute "activities of daily living." R. 16. Specifically, the ALJ noted that Plaintiff lives alone and handles housework, though at her own pace. For example, Plaintiff mows her lawn, although she takes twice as long as her neighbors. Plaintiff also goes grocery shopping, prepares easy dishes, does laundry, drives on occasion, and handles her own personal care. R. 16. The ALJ further found that Plaintiff only has "mild to moderate difficulties" in social functioning. R. 16. Plaintiff testified that she is able to go out in public to run errands. Plaintiff also testified that she goes to church and bible study on occasion, sees friends and family once or twice per week, and goes out to eat on occasion. R. 16. The ALJ then found that Plaintiff had only moderate difficulty with concentration, persistence, and pace. R. 17. The ALJ based this determination on the same assessment of Plaintiff's regular

activity.  Finally, the ALJ found that Plaintiff has no episodes of decompensation, which have been of "extended duration."

Next, in accordance with 20 C.F.R. § 404.1529, the ALJ used the two-step process of symptom evaluation to evaluate Plaintiff's claim that the extent of her symptoms rendered her disabled.  In the first step, the ALJ found that Plaintiff had medically determinable impairments, *i.e.*, "excessive daytime sleepiness, obstructive sleep apnea, restless leg syndrome, mild degenerative changes in the lumbar spine and hips degenerative changes of the sacrum, headaches, fibromyalgia, bilateral carpal tunnel syndrome, left epicondylitis" and that those impairments could reasonably be expected to cause Plaintiff's claimed symptoms.  R. 18-19.  However, in the second step, the ALJ found that Plaintiff's statements regarding the extent of her symptoms were "not entirely credible."  R. 19.  Specifically, the ALJ found that Plaintiff's statements were credible only to the "extent that she is limited to a range of light work."  R. 19.  As a result, the ALJ found that Plaintiff's symptoms did not support a finding of disability.

The ALJ found that Plaintiff's claims that her physical symptoms prevented her from performing all types of work were not

consistent with the objective medical evidence.  The ALJ found that
Plaintiff's claim about the extent of her daytime sleepiness and
sleep apnea symptoms was not credible.  First, the ALJ noted that
although medical source statements, including an August 2006
statement from Dr. Najjar, indicate that Plaintiff's daytime
sleepiness and sleep apnea render her unable to work, those
statements are not given "significant weight" because Plaintiff was
employed in substantial gainful activity, as a chiropractic assistant,
at a time after such statements were made.  R. 19.  Second, the ALJ
noted that Plaintiff does not use her prescribed sleep mask.   The
ALJ further noted that although Plaintiff testified that she does not
use her mask because of complications with her allergies, Plaintiff's
allergies are worsened by Plaintiff's keeping of cats as pets.  The
ALJ also noted that Plaintiff refuses to consider the use of an oral
appliance.  R. 19.  Finally, the ALJ noted that a treating source, Dr.
Reedy, wrote in 2012 that Plaintiff's daytime sleepiness issues only
exist if Plaintiff does not take her medication.

The ALJ then found that Plaintiff's claims about the extent of
her remaining physical symptoms were also not credible.  The ALJ
noted that MRI and x-ray studies of Plaintiff's back and hips show

only "mild degenerative changes." R. 20. The ALJ further noted
that she "considered" Plaintiff's chiropractic records but that a
chiropractor is not an acceptable medical source and that the
records do not establish "muscular atrophy or significant
neurological deficits." R. 20. The ALJ also noted that, in 2012, Dr.
Pineda did not recommend surgery and stated that Plaintiff had a
"normal gait." Also in 2012, Dr. Fortin found "point tenderness"
but did not find "motor, sensory, or reflex loss with negative straight
leg raising." In 2013, Dr. Ranatunga found some reduced back
motion but "no spasms or neurological defects."

The ALJ noted that, although Plaintiff was diagnosed with
fibromyalgia based on "a few tenderness points," there was no
notation as to whether "the majority of points tested positive." R.
20. The ALJ also noted that Plaintiff's medical notes do not show
headaches with the "frequency or severity" that would prevent
Plaintiff from doing all types of work.

The ALJ next found that the remaining credibility factors failed
to support a finding of complete disability based on Plaintiff's
physical symptoms. R. 20. The ALJ noted that although Plaintiff
takes many medications, she does not take the "strong codeine or

morphine-based analgesics usually prescribed for severe and unremitting pain." R. 20.  The ALJ also noted that Plaintiff was not required to go to the hospital because of pain problems.  The ALJ then noted that Plaintiff has tried other methods of treating her pain, *e.g.*, chiropractor visits, massage, ultrasound, and physical therapy; however, the ALJ did not say whether she gave any weight to Plaintiff's efforts.  R. 20.

The ALJ next noted that Plaintiff's daily activities show that she is not functionally restricted to the point of disability, citing the daily activities and social interactions the ALJ had previously discussed.  Further, the ALJ noted that, although Plaintiff claims she cannot even use her hands to play cards, Plaintiff recently volunteered for two hours at a benefit for an animal shelter, using her hands to take tickets and payments.  Finally, the ALJ noted that Plaintiff's former-coworker and Plaintiff's ex-husband described Plaintiff's symptoms similarly to how Plaintiff described her symptoms.  However, the ALJ found that those third-party statements, like Plaintiff's statements, were not credible because they were not consistent with the medical evidence.

The ALJ then found that Plaintiff's mental symptoms did not support a finding of disability.  The ALJ found that Plaintiff is limited by an affective disorder.  However, the ALJ noted that Plaintiff has not required any hospital or emergency room visits for depression since the onset dates.  R. 21.  The ALJ further noted that, until 2012, Plaintiff did not even see mental health professionals and was described as "doing well" on medication.  R. 21.  Then, when Plaintiff did see Dr. Kakumani at the Center for Psychiatric Health in 2013 she was "cooperative, polite, and friendly" at visits and her status exams were within normal limits. The ALJ then referred, again, to Plaintiff's daily activities and social interactions in finding that no disability existed.

Finally, the ALJ considered the opinions of state agency physicians.  The ALJ stated that the state agency physicians opinions about Plaintiff's *physical* symptoms were not "given controlling weight" because the physicians did not have the latest medical evidence and the physicians did not have the benefit of "assessing [Plaintiff's] credibility at hearing."  However, the ALJ stated that the same state agency physician's opinions on Plaintiff's

mental capacity for work were given "significant weight" because they were consistent with the rest of the record.

As a result of the ALJ's findings on Plaintiff's symptoms, the ALJ found that Plaintiff could not perform any past relevant work as an accountant or bookkeeper/receptionist. R. 22. However, the vocational expert testified that someone similarly situated to Plaintiff could perform the light work requirements of an injection molder, extrusion press operator, or parking lot attendant, as well as the sedentary work requirements of a circuit board screener. R. 23. The ALJ found that these jobs exist in "significant numbers in the national economy" and, therefore Plaintiff is not disabled. R. 23.

On January 9, 2015, Plaintiff appealed the Commissioner's decision to this Court (d/e 1). The parties subsequently filed cross motions for summary judgment (d/e 11, 14). The Court referred the matter to U.S. Magistrate Judge Schanzle-Haskins for a Report and Recommendation. Judge Schanzle-Haskins issue his Report and Recommendation on July 17, 2016 (d/e 16). Judge Schanzle-Haskins recommended that this Court grant Plaintiff's motion for summary judgment, deny the Commissioner's motion for summary

affirmance, and remand Plaintiff's case to the ALJ.  Judge Schanzle-Haskins noted that, in March, the Social Security Administration (SSA) issued SRR 16-3p, which clarified how an ALJ should apply the two-step method of symptom evaluation.  Specifically, SSR 16-3p superseded SSR 96-7p, cited by ALJ Flebbe, and clarified how the credibility of a claimant's alleged symptoms should be determined.  The SSR states that an ALJ shall not make any general "credibility determination" about a claimant for the purposes of evaluating the truth of the claimant's statements.  Rather, the ALJ should evaluate the credibility of each alleged symptom individually based both on the objective medical evidence and other evidence in the record.

Judge Schanzle-Haskins found that SSR 16-3p applies retroactively to this case.  Further, he found that that the ALJ based her decision, in part, on a credibility determination that is now improper under SSR 16-3p.  As a result, Judge Schanzle-Haskins recommended that this case be remanded to the ALJ for further consideration in light of SSR 16-3p.

On July 25, 2016, the Commissioner filed an objection to the Report and Recommendation (d/e 16).  The Commissioner argues

that substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms, even in light of SSR 16-3p.  Specifically, the Commissioner suggests that the Magistrate Judge's recommendation is based only on the ALJ's use of the word credibility and the ALJ's failure to give controlling weight to the state agency physicians.  The Commissioner argues that: (1) the use of the word credibility alone does not violate SSR 16-3p; (2) the ALJ adequately assessed the credibility of Plaintiff's statements based on the factors in 20 C.F.R. § 1529(c)(3); and (3) any error in the ALJ's consideration of the state agency physician's opinions on Plaintiff's physical impairments is harmless because consideration of those opinions would not have benefited Plaintiff.

The Court now OVERRULES the Commissioner's objection. The Court ACCEPTS and ADOPTS Judge Schanzle-Haskins' Report and Recommendation and finds that SSR 16-3p applies retroactively to this case and that the ALJ made a credibility determination that is no longer permitted.  Further, the Court finds that the ALJ did not adequately consider the § 1529(c)(3) factors. As a result, this case is REMANDED to the ALJ for further consideration consistent with SSR 16-3p and this Opinion.

## II. LEGAL STANDARD

This Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the Magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3). The Court's standard of review for a Magistrate judge's Report and Recommendation depends upon whether a party objects. Portions of the Report and Recommendation that are not properly objected to are reviewed for clear error. See Reed v. Commissioner of Social Security, 13-3426, 2015 WL 4484141, *1 (C.D. Ill. July 22, 2015) (citing Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999)). Portions of the Report and Recommendation that are properly objected to are reviewed de novo. See Fed.R.Civ.P. 72(b)(3).

Here, the Commissioner objected to the Report and Recommendation in full, so the Court will review the report de novo.

In the Court's de novo review of the ALJ's decision, adopted by the Appeals Council, the standard of review for the ALJ's findings adopted by the Appeals Council, is substantial evidence. Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate'" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The

standard of review for procedural errors is harmless error, or

whether the error is such that the Court believes it may change the

ultimate decision of the ALJ or Appeals Council.  McKinzey v.

Astrue, 641 F.3d 884, 892 (7th Cir. 2011)

([A]dministrative error may be harmless: we will not remand a case

to the ALJ for further specification where we are convinced that

the ALJ will reach the same result.")


## III. ANALYSIS

### a. SSR 16-3p Applies Retroactively to Plaintiff's Case.

On March 16, 2016, the SSA issued SSR 16-3p, which became

effective on that date.  Although SSRs are "interpretive rules" that

"do not have the force of law or properly promulgated notice and

comment regulations," the SSA makes SSRs "binding on all

components of the Social Security Administration."  Lauer v. Apfel,

169 F.3d 489, 492 (7th Cir. 1999) (citing 20 C.F.R. § 402.35(b)(1)).

And courts "generally defer to an agency's interpretations of the

legal regime it is charged with administrating."  Liskowitz v. Astrue,

559 F.3d 736, 744 (7th Cir. 2009).

The ALJ issued her decision in this case on August 26, 2013, more than two years prior to the effective date of SSR 16-3p. However, statements made by administrative agencies apply retroactively to administrative rulings when the statement is only intended to "clarify" an existing ruling, rather than make a substantive change in the law.  Pope v. Shalala, 998 F.2d 473, 482-83 (7th Cir. 1993), overruled on other grounds, Johnson v. Apfel, 189 F.3d 561, 562-63 (7th Cir. 1999).

In Judge Schanzle-Haskins' Report and Recommendation, he found that SSR 16-3p was intended to clarify the two-step evaluation process for assessing symptoms and, therefore, SSR 16-3p applies retroactively.  (d/e 16) at 8.  The Commissioner did not object to the Magistrate Judge's finding that SSR 16-3p applies retroactively.  Therefore, this Court reviews the finding only for clear error.  The Court finds that Judge Schanzle-Haskins did not err in his finding that SSR 16-3p applies retroactively, as the Magistrate Judge's finding is in accordance with this Court's Opinion in Mendenhall v. Covlin, 14-cv-3389 (d/e 19) (C.D. Ill. Springfield, Aug. 9, 2016) (finding that SSR 16-3p applies retroactively). Therefore, SSR 16-3p applies retroactively here.

### b. **The ALJ Did Not Properly Apply the Two-Step Process for Evaluating the Intensity, Persistence, and Limiting Effects of Plaintiff's Symptoms.**

*1. The ALJ's decision was influenced, in part, by her evaluation of Plaintiff's credibility, which is improper under SSR 16-3p.*

In the Magistrate Judge's Report and Recommendation, he found that the ALJ's evaluation of Plaintiff's credibility was improper under 16-3p.  The Commissioner objects to this finding, arguing that (1) Judge Schanzle-Haskins' finding was based only on the use of the word credibility and not a finding that the ALJ actually evaluated Plaintiff's credibility as a witness; and (2) that the ALJ properly evaluated the credibility of Plaintiff's allegations regarding her symptoms, based on the evidence in the record, as restated in SSR 16-3p.  Because the Commissioner has properly objected, the Court reviews Judge Schanzle-Haskins' finding de novo.

In SSR 16-3p, the SSA clarified how ALJs and other administrators should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." The ALJ will continue to use the two-step process to evaluate a claimant's symptoms.  As before, in the first step, the ALJ

determines whether the "individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p. In this step, the ALJ does not consider whether the "severity" of the alleged symptoms is supported by the objective medical evidence. Rather, the ALJ determines only whether such a symptom could reasonably be produced by an impairment that is supported by the medical evidence. See id. (if a claimant alleges severe knee pain that limits the claimant's ability to walk, the ALJ, in the first step, determines only whether the claimant has a medically determinable impairment that could reasonably be expected to cause knee pain).

If the ALJ finds that the claimant has a medically determinable impairment that could reasonably be expected to produce the symptom, then the ALJ moves to step two. In step two, the ALJ then evaluates the intensity and persistence of the individual's symptoms and, for an adult, "determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Id.

Previously, under SSR 96-7p, the SSA used the term "credibility" to refer to an ALJ's determination of whether a

claimant's statements about his or her alleged symptoms were consistent with the evidence in the record.  However, in SSR 16-3p, the SSA stated that administrators were improperly construing this "credibility" interpretation to parallel the credibility determinations made in adversarial litigation.  The SSA clarified that an ALJ is not to make an evaluation of the claimant's "character for truthfulness." Rather, the ALJ shall independently address each of the claimant's alleged symptoms and determine whether the claimant's assertion regarding the intensity, persistence, and limiting affects" of the symptom is supported by the evidence in the record.

The Commissioner argues that, in this case, the ALJ used the word credibility only to refer to whether the statements were supported by the evidence, in accordance SSR 96-7p—the most recent guidance from the SSA on the issue at the time.  However, the Court finds that the ALJ improperly based her opinion, in part on an evaluation of Plaintiff's "character for truthfulness" and, therefore, this case must be remanded to the ALJ for further consideration consistent with SSR 16-3p.

The Court finds that, in some instances, the ALJ likely based her credibility determination only on whether Plaintiff's statements

were consistent with the evidence in the record.  For example, the ALJ found that statements by Plaintiff's former co-worker and Plaintiff's ex-husband were "less than fully credible" because they were "inconsistent with the objective medical record and relevant credibility factors."  R. 21.  This use of the term credibility suggests a finding simply that the statements could not be substantiated by the evidence in the record, a determination that is consistent with SSR 16-3p.

However, in one particular instance, the ALJ implied that she based her opinion, in part, on an evaluation of Plaintiff's character for truthfulness.  The ALJ determined that the opinions of state agency physicians regarding Plaintiff's physical symptoms should not be given controlling weight because "[t]hese physicians did not have the benefit of reviewing the latest medical evidence or *assessing [Plaintiff's] credibility at hearing.*"  R. 21 (emphasis added).  This statement clearly implies that the ALJ evaluated not only the credibility of Plaintiff's statements based on the record but also Plaintiff's general character for truthfulness, as prohibited by SSR 16-3p.  The ALJ discredited the state physicians' opinions for two distinct reasons: (1) because the physicians did not have access

to the full record with which to evaluate the consistency of Plaintiff's statements with the evidence and (2) because they were not present at the hearing to assess Plaintiff's credibility as a witness.

Further, the ALJ clearly implies, in the same statement, that she based her assessment of Plaintiff's symptoms on this assessment of Plaintiff's credibility. If the ALJ did not give weight to her evaluation of Plaintiff's credibility, then the ALJ would have no reason to discredit the state physicians' opinions based on the physicians' inability to make a similar credibility evaluation. Therefore, the ALJ's opinion is not consistent with the SSA's guidance in SSR 16-3p and must be remanded.

The Commissioner also argues that any error by the ALJ in giving improper weight to the state agency physicians is harmless. However, the Court finds that Judge Schanzle-Haksins made no finding that the ALJ committed error in disregarding the state agency physicians' opinions on Plaintiff's physical symptoms. Rather, Judge Schanzle-Haskins merely cited the ALJ's reasoning in disregarding those opinions as evidence that the ALJ based her

opinion, in part, on Plaintiff's character for truthfulness.  Therefore, the Court overrules this objection.

###### 2. *The ALJ did not properly consider the additional factors set forth in 20 C.F.R. § 404.1529(c)(3).*

The Court also finds that the ALJ improperly assessed Plaintiff's symptoms because the ALJ did not adequately consider all of the factors provided in 20 C.F.R. § 404.1529(c)(3).  The ALJ must consider "all available evidence" when evaluating the "intensity and persistence" of the claimant's symptoms in step two of the process.  20 C.F.R. § 404.1529(c)(1).  First, the ALJ must determine whether the intensity and persistence of the claimant's symptoms is consistent with the objective medical evidence.  20 C.F.R. § 404.1529(c)(3).  However, the ALJ may base his or her opinion solely on the objective medical evidence only if the ALJ finds that the claimant is disabled.  See id. ("we will not reject your statements about the intensity and persistence of your pain or other symptoms and the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

Rather, because symptoms can sometimes more severely affect a claimant than "can be shown by objective medical evidence alone," an ALJ must consider "any other information" the claimant submits regarding his or her symptoms.  20 C.F.R. § 404.1529(c)(3).  In reviewing additional evidence, the ALJ considers seven listed factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication taken; (5) treatment other than medication received; (6) any additional measures taken to combat symptoms aside from medication or treatment; and (7) other factors regarding functional limitations and restrictions.  Id.

In this case, the ALJ considered additional evidence and these factors to some degree, as opposed to basing her decision solely on the objective medical evidence.  R. 20-22.  However, the Court finds that the ALJ's consideration of these factors was not adequate.

First, the ALJ did not adequately consider all evidence relevant to Plaintiff's daily activities.  The ALJ found that Plaintiff's daily activities "indicate that [Plaintiff] can perform work activity."  R. 20.  The ALJ noted that: (1) Plaintiff lives alone and handles housework

at her own pace; (2) Plaintiff still drives and attends Bible study; and (3) Plaintiff shops, pays her own bills, and cares for her own personal needs.  R. 20.  However, Plaintiff testified only to limited daily activities.  Specifically, Plaintiff testified that she "make[s] an attempt" to conduct certain activities "depending on how [she's] feeling."  R. 57.  Plaintiff testified that every time she does an activity she is "taking a break ten, fifteen minutes in to it."  R. 57.  For example, when testifying about doing laundry, Plaintiff stated that "[i]t could take several days during the week and even throughout the day it will take several attempts."  R. 58.  Similarly, Plaintiff testified that when mowing the lawn she has to mow in 10-20 minute increments and then take 10-15 minute breaks.  R. 59-60.

In the ALJ's summary that Plaintiff can do daily activities "at her own pace," she does not consider that "full-time work does not allow for the flexibility to work around periods of incapacitation." Moore v. Colvin, 743 F.3d 1118, 1126 (7th Cir. 2014).  "'[M]inimal daily activities', such as preparing simple meals" and "weekly grocery shopping," especially when Plaintiff cannot accomplish the activities without frequent breaks, "'do not establish that [she] is

capable of engaging in substantial physical activity.'" Beardsley v.
Covlin, 758 F.3d 834, 838 (7th Cir. 2014) (quoting Clifford v. Apfel,
227 F.3d 863m 872 (7th Cir. 2000)).  On remand, the ALJ must
further consider whether Plaintiff's ability to only sporadically
conduct daily activities truly supports a finding that Plaintiff
"performs daily activities independently and effectively."  R. 21.

In the ALJ's consideration of Plaintiff's treatments, the ALJ
dismissed any limitations that may be caused by sleep apnea
because of Plaintiff's noncompliance with her prescribed treatment.
R. 19.  The ALJ noted that Plaintiff keeps cats although they
contribute to her allergies, which affect Plaintiff's ability to wear her
CPAP mask.  The ALJ further noted that Dr. Reedy stated in a 2013
report that Plaintiff was "not very disciplined."  R. 19.  However, the
record is not clear whether Dr. Reedy meant that Plaintiff lacks the
discipline necessary to use a CPAP mask or whether Dr. Reedy was
simply stating that Plaintiff was not using the CPAP mask in a
disciplined fashion.  In fact, directly after the statement, Dr. Reedy
notes that Plaintiff's issues with depression "might be complicating
her course" and that Plaintiff was "working with the physician to get
this under control."  R. 1075.  Plaintiff testified at the hearing that

the reason she continued to keep her cats was because they "were her comfort from depression."  R. 65.

Despite acknowledging that the objective medical evidence of Plaintiff's mental health showed that Plaintiff has an "affective disorder," the ALJ did not consider how that disorder could be impacting Plaintiff's ability to be disciplined with her CPAP mask. R. 20-21.  Nor did the ALJ mention any other causes of Plaintiff's allergies and whether Plaintiff's allergies would persist even without cats.  This quick dismissal is against the SSA's admonition that the ALJ "consider and address reasons for not pursuing treatment" and "explain how [she] considered the individual's reasons" in the evaluation of the symptoms."  SSR 16-3p.  Further, the ALJ mentioned that Plaintiff tried several different CPAP masks in an effort to improve her condition but the ALJ did not appear to give this fact any weight.  See SSR 16-3p (citing 20 C.F.R. §§ 1529(c) and 416.929(c)) ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications [or] trying a variety of treatments" may show that symptoms are "intense and persistent.").  On remand, the ALJ should consider whether

Plaintiff's mental disorder affects her ability to comply with treatment for sleep apnea.

## IV. CONCLUSION

For the foregoing reasons, this Court ACCEPTS and ADOPTS the disposition recommended in the Judge Schanzle-Haskins' Report and Recommendation (d/e 16).

IT IS HEREBY ORDERED that the Commissioner's Objection to the Magistrate Judge's Report and Recommendation (d/e 17) is OVERRULED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (d/e 11) is GRANTED and the Commissioner's Motion for Summary Affirmance (d/e 14) is DENIED.  The decision of the ALJ is REVERSED.  Plaintiff's case is REMANDED for further consideration consistent with SSR 16-3p and this Opinion

IT IS SO ORDERED.  This case is CLOSED.

ENTER: August 25, 2016

FOR THE COURT:

            s/Sue E. Myerscough
            SUE E. MYERSCOUGH
        UNITED STATES DISTRICT JUDGE